**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

**ARTHUR CAPONE**, on behalf of himself and all others similarly situated,

Plaintiff,

v.

**TRUSTEES OF BOSTON UNIVERSITY,**

Defendant.

Case No. 1:26-cv-15067

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Arthur Capone ("Plaintiff"), through his counsel, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Trustees of Boston University ("Boston University," "BU," or "Defendant"). Plaintiff alleges his own experiences on personal knowledge. His allegations about the intrusion, the records taken, and matters within BU's control are made on information and belief.

## NATURE OF ACTION

1. Arthur Capone entrusted Boston University with his Social Security number, identifying information, student information, and payment records while attending the University. After his graduation, an individual publicly claimed to have taken eight gigabytes of BU data, including enrollment, course, grade, payment, and identifying records. This action arises from BU's failure to safeguard the records entrusted to it by Plaintiff and others similarly situated.

2. BU is a private nonprofit research university headquartered in Boston, Massachusetts. In providing undergraduate, graduate, and professional education, it collects

information that identifies students, documents their education, and connects them to their student accounts.[1]

3. BU maintains personally identifiable information ("PII") together with nonpublic academic, financial, and other records associated with identifiable individuals (collectively, "Private Information"). On information and belief, an unauthorized actor acquired Private Information maintained by BU in the cybersecurity incident publicly reported on or about November 1, 2026 (the "Data Breach").

4. The exact date of the initial intrusion, the means of access, and the period during which BU's records were accessible are presently unknown. Those facts can be determined through BU's system and access logs, incident investigation, and records identifying the data accessed or exported.

5. On information and belief, insufficient access restrictions, oversight of retained records, and monitoring of access to large collections of student data allowed the actor to acquire records maintained for University purposes. The reported collection spanned data ordinarily maintained for different functions, including student identification, enrollment, academic work, and billing.

6. Plaintiff is a 2023 BU graduate. On information and belief, his Private Information was among the records compromised in the Data Breach. He has received an increased number of unsolicited calls and texts at the telephone number he gave BU, including communications using his first name. He brings this action on behalf of himself and others whose Private Information was compromised.

---

[1] Boston University, About BU, https://www.bu.edu/about/ (last accessed November 3, 2026).

7. A student can change a password. He cannot replace his date of birth or the academic history reflected in his transcript. When those records are acquired together with identifiers and payment information, the person who acquires them can use one category of information to make misuse of another more convincing.

## PARTIES

8. Plaintiff Arthur Capone resides in New York, New York, and, on information and belief, is domiciled in and is a citizen of New York. He attended Boston University from 2020 through 2023 and graduated in the Class of 2023.

9. Defendant Trustees of Boston University is a Massachusetts nonprofit corporation chartered under Massachusetts law. The Trustees operate Boston University, and the University's principal place of business is in Boston, Suffolk County, Massachusetts. The Office of the Trustees is located at One Silber Way, Boston, Massachusetts 02215.[2, 3]

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A). The proposed Class contains more than 100 persons. Plaintiff is a citizen of New York, and Defendant is incorporated and has its principal place of business in Massachusetts. On information and belief, the amount in controversy, aggregated across the proposed Class, exceeds $5 million, exclusive of interest and costs. See 28 U.S.C. § 1332(d)(5)(B), (d)(6).

---

[2] Boston University, Charter, Statutes & By-Laws, Acts of 1869, ch. 322, §§ 1, 3, https://www.bu.edu/trustees/boardoftrustees/charter/ (last accessed November 3, 2026).
[3] Boston University, Office of the Trustees, Contact Us, https://www.bu.edu/trustees/contact-us/ (last accessed November 3, 2026).

11. This Court has personal jurisdiction over Defendant because it is incorporated and headquartered in Massachusetts. BU also administered the student records, financial accounts, and data-security practices at issue from this District.

12. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2). Defendant resides in this District, and a substantial part of the acts and omissions giving rise to the claims occurred here, including BU's collection, administration, retention, and protection of student and payment records. Boston is in Suffolk County in the Eastern Division of this District.

## BACKGROUND

***BU Collected and Retained the Private Information of Plaintiff and the Class***

13. BU administers admissions, registration, courses, grades, transcripts, enrollment, student accounts, and payments. The University's registration process connects settlement of a student's financial account with completion of official registration.[4]

14. These operations require BU to associate an identifiable individual with records generated over many academic terms. A person's name may be connected in University systems to an address, telephone number, date of birth, government identifier, academic record, and payment history.

15. BU retains certain records long after students leave. Its published retention schedule assigns permanent retention to transcripts and to specified record-level enrollment snapshots in its Academic Data Warehouse. Those retention periods explain why a 2023 graduate's records may remain in BU's possession years later.[5]

---

[4] Boston University, Your Student Account, https://www.bu.edu/studentfinancials/your-bill/ (last accessed November 3, 2026).
[5] Boston University, Record Retention Table, Academic/Student Records, https://www.bu.edu/policies/record-retention-table/ (last accessed November 3, 2026).

16. Plaintiff and Class Members supplied their information to BU, or had records created by BU, for specific University purposes. They reasonably expected BU to restrict access to authorized persons and to protect those records for as long as it retained them.

17. BU recognizes the confidentiality of education records. Its Office of the University Registrar states that "Boston University does not disclose personally identifiable information contained in student education records, except as authorized by law."[6]

a. BU directs personnel to treat student records as confidential. Its data-access standard restricts access to confidential and restricted-use information according to administrative need and authorized University purposes. Its separate guidance classifies Social Security numbers and driver's license numbers as restricted-use data and limits when departments may collect, use, store, or transmit them.[7, 8]

***Boston University's Data Breach***

18. On information and belief, on or about November 1, 2026, a single individual claimed on the dark web to have obtained approximately eight gigabytes of data from Boston University. November 1 is the reported disclosure date. The date on which the underlying records were acquired remains unknown.[9]

---

[6] Boston University, Office of the University Registrar, Family Educational Rights and Privacy Act – FERPA, https://www.bu.edu/reg/academics/ferpa/ (last accessed November 3, 2026).
[7] Boston University, FERPA Guidance, https://www.bu.edu/policies/family-educational-rights-and-privacy-act-ferpa-guidance/ (last accessed November 3, 2026).
[8] Boston University, Data Access Management Standard, https://www.bu.edu/policies/data-access-management-standard/ (last accessed November 3, 2026). Boston University, Guidance on Use of Social Security Numbers and Other Personal Information, https://www.bu.edu/policies/guidance-on-use-of-social-security-numbers-and-other-personal-information/ (last accessed November 3, 2026).
[9] Daily Dark Web (@DailyDarkWeb), report concerning Boston University, Nov. 1, 2026, https://x.com/DailyDarkWeb/status/2116863997081440339.

19. The actor described a dataset containing approximately two million rows. According to that description, the data linked identifying information with immigration, academic, and financial records. The reported figure counts rows of data. One student may have records for many courses, terms, or payments.

20. The actor described the following categories of information in the dataset.

a. Names, addresses, telephone numbers, dates of birth, and email addresses.

b. Social Security numbers.

c. Passport and visa records.

d. Enrollment, course, and grade records.

e. Payment records.

21. On information and belief, the incident affected students, former students, and other persons whose records BU retained, potentially including faculty. The Class may number 80,000 or more. The precise number of distinct individuals and the records affected for each individual remain to be determined.

22. On information and belief, the records acquired included Private Information of Plaintiff and members of the Class. The description of the dataset corresponds to the kinds of records BU maintains, including records identifying students, their enrollment and academic history, and their payments.

23. As of November 3, 2026, Plaintiff had received no individual notice from BU concerning this incident. He does not know which fields from his records were accessed. The actor's description does not establish that every listed field was taken for every person.

24. The full scope of the exposure, including whether any driver's license information, medical records, or health insurance information was also involved, remains to be determined.

Plaintiff's personal allegations concern the identifying, student, and payment information he gave BU.

25. On information and belief, BU failed to adequately limit, monitor, and investigate access to the sensitive records entrusted to it. Those failures allowed an unauthorized person to obtain information that students supplied to BU for education and account administration.

26. BU controls its logs, retention records, and forensic findings. Without an account of which systems and files were involved, Plaintiff cannot identify the precise records at risk or determine which protective steps are warranted.

27. On information and belief, the loss of control over a dataset of this size placed sensitive identifiers and nonpublic academic and payment information in unauthorized hands. Graduation did not end BU's custody of the records it chose to keep.

***The Reported Dark Web Claim and Risk of Misuse***

28. The actor claimed to possess records from multiple University functions. In addition to names and contact details, the actor described Social Security numbers, passport and visa information, enrollments, courses, grades, and payments. The actor's identity and the means by which the data were obtained remain to be established.

29. A combination of identifiers and records of actual dealings with a university can be used to impersonate its personnel. A message that addresses a graduate by name and accurately refers to an enrollment term, course, or payment may appear credible to the recipient.

30. The Federal Trade Commission has explained that criminals use underground markets to obtain stolen information for identity fraud and other unlawful purposes. A person who

acquires an electronic copy can transfer it again without the knowledge of BU or the students concerned.[10]

31. On information and belief, the acquisition described by the actor exposed Plaintiff's and Class Members' Private Information to further disclosure, transfer, or misuse. The particular records that have been redistributed, and any consideration received for them, are within the knowledge of persons other than Plaintiff.

***Plaintiff's Experiences and Injuries***

32. Plaintiff Arthur Capone enrolled at Boston University in 2020, attended through 2023, and graduated in the Class of 2023. In the course of that relationship, he provided BU with his name, date of birth, Social Security number, address, payment records, and student information.

33. BU also had the telephone number Plaintiff continues to use. It maintained academic and account information concerning his enrollment and participation in the University. On information and belief, it retained records identifying him after graduation under its ordinary retention practices.

34. Plaintiff gave BU the information it needed to provide and administer his education. He authorized its use for legitimate University purposes. He did not authorize an outsider to acquire his records or use them to contact him.

35. Plaintiff reasonably expected BU to limit access to his confidential identifiers, academic history, and payment information and to protect them while retained. BU's representations concerning student-record confidentiality and its published retention practices are consistent with that expectation.

---

[10] Federal Trade Commission, The Dark Web: What Your Business Needs to Know (Oct. 17, 2017), https://www.ftc.gov/business-guidance/blog/2017/10/dark-web-what-your-business-needs-know (last accessed November 3, 2026).

36. On information and belief, Plaintiff's Private Information was included in the Data Breach. The reported dataset included categories of information he provided to BU and academic and payment records of the kind BU maintained for him as a student.

37. Plaintiff has recently experienced an increase in spam text messages and calls to the same number on file with Boston University. Some of the unwanted communications use his first name. He generally disregards unsolicited calls and deletes communications he recognizes as spam.

38. The communications Plaintiff described used his name but did not recite another sensitive identifier. He generally does not answer the calls. The increase in personalized communications is consistent with exposure of the name and telephone information described by the actor. The extent to which particular communications are attributable to that exposure is not yet known.

39. Plaintiff has no personal knowledge that a specific record of his has been published on the dark web. Without information from BU about the affected systems and files, he cannot determine from the reported claim alone whether a particular identifier, transcript entry, or payment record of his is in the actor's possession.

40. Plaintiff alleges a present loss of privacy and control over his information through the unauthorized acquisition of his confidential records. The information at issue extends beyond his name to identifying, student, and payment information he had entrusted to BU.

41. The compromised information retains value to persons who can connect a stable identifier with details about Plaintiff's education and finances. On information and belief, unauthorized acquisition diminished the value of the confidentiality he reasonably expected BU to preserve.

42. Plaintiff received University services through his enrollment and student account. He reasonably understood that the services associated with his account included reasonable protection of the information BU required and retained. On information and belief, he received less than the value of the services for which payment was made when BU failed to provide that protection.

43. Plaintiff faces a continuing risk of impersonation, identity theft, and targeted communications from the exposure of identifying information in combination with records specific to him. Identifiers such as a Social Security number and academic records such as a transcript are difficult or impossible to replace.

44. BU's permanent transcript and enrollment-record retention practices give Plaintiff an ongoing interest in the security of records BU continues to hold concerning him. He seeks relief directed to those records and to continuing deficiencies established through discovery.

***Consumers Prioritize Data Security***

45. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[11] Therein, Cisco reported the following:

a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[12]

---

[11] Privacy Awareness: Consumers Taking Charge to Protect Personal, Cisco, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last accessed March 19, 2025).
[12] Id. at 3.

b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[13]

c. 89% of consumers stated that "I care about data privacy."[14]

d. 83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[15]

e. 51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[16]

f. 75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[17]

***Plaintiff and the Proposed Class Suffered Common Injuries and Damages***

46. As a result of the Data Breach, Plaintiff and Class Members have lost privacy and control over their information. Depending on the records affected and individual circumstances, the resulting injuries and risks include the following.

a. loss of the opportunity to control how their Private Information is used;

b. diminution in value of their Private Information;

c. Continuing disclosure or dissemination of nonpublic academic, identifying, or payment records.

d. out-of-pocket costs from trying to prevent, detect, and recover from identity theft and fraud;

---

[13] Id.
[14] Id. at 9.
[15] Id.
[16] Id.
[17] Id. at 11.

e. lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identity theft and fraud;

f. Targeted communications that exploit identifying information and details of a person's educational or financial relationship with BU.

g. unauthorized use of their stolen Private Information; and

h. Continuing risks to the confidentiality of retained information and the need for reasonable protective measures as circumstances warrant.

***Substantially Increased Risk of Identity Theft and Fraud***

47. Plaintiff and Class Members are at a heightened risk of identity theft for years to come because of the Data Breach.

48. Federal regulations define identity theft as fraud committed or attempted using another person's identifying information without authority. See 16 C.F.R. § 603.2(a).

49. Identifying information includes names, Social Security numbers, dates of birth, government identification numbers, and other information capable of identifying a specific person. See 16 C.F.R. § 603.2(b).

50. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal individuals' personal data to monetize the information. Criminals monetize the data by selling the stolen information on the internet black market (aka the Dark Web) to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

51. The dark web includes services reached through specialized software or authorization. Restricted access and the relative anonymity of participants can facilitate the transfer of stolen identifiers and other confidential information.[18]

52. Records from a university can provide both identifying data and answers to questions about a person's background. An unauthorized person can use those details to impersonate a graduate, pose as a University official, or direct a targeted request for further information.

53. Theft of Social Security numbers also creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of their SSN, and a new SSN will not be provided until after the victim has suffered the harm.

54. In particular, the theft of Social Security numbers—in combination with other Private Information (e.g., name, address, date of birth)—provides cybercriminals with a "skeleton key" to commit rampant fraud and identity theft.

55. For example, cybersecurity expert Jim Stickley explained to Time Magazine that "[i]f I have your name and your Social Security number, and you haven't gotten a credit freeze yet, you're easy pickings . . . With that, you can do whatever you want . . . You can become that person."[19] For context, Jim Stickley is a "penetration tester" who is employed by businesses "to infiltrate their systems in order to find flaws they can fix before the bad guys exploit them."[20]

---

[18] Experian, What Is the Dark Web?, https://www.experian.com/blogs/ask-experian/what-is-the-dark-web/ (last accessed November 3, 2026).
[19] Patrick L. Austin, 'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say, Time Magazine (Aug. 5, 2019) https://time.com/5643643/capital-one-equifax-data-breach-social-security/.
[20] Id.

56. There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. Fraud and identity theft resulting from the Data Breach may go undetected until debt collection calls commence months, or even years, later. An individual may not know that their Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

57. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, and it takes some individuals up to three years to learn that information.[21]

58. Individuals cannot reliably retrieve all electronic copies of information once an unauthorized person has acquired it. Courses, grades, enrollment histories, and graduation dates remain accurate long after a student leaves BU.

59. Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or to track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

60. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to

[21] John W. Coffey, Difficulties in Determining Data Breach Impacts, 17 J. Systemics, Cybernetics & Informatics 9 (2019) http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches are often the starting point for these additional targeted attacks on the victims.

61. Identity thieves can also use an individual's personal data and Private Information to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's information, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant issued in the victim's name.[22]

62. One example of criminals piecing together bits and pieces of compromised Private Information to create comprehensive dossiers on individuals is called "Fullz" packages.[23] These dossiers are both shockingly accurate and comprehensive. With "Fullz" packages, cybercriminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals. For example, they can combine the stolen Private Information with unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

---

[22] Identity Theft and Your Social Security Number, Social Security Administration, 1 (2018), https://www.ssa.gov/pubs/EN-05-10064.pdf. (last accessed July 9, 2025).
[23] Brian Krebs, Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm, Krebs on Security (Sept. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm/ (last accessed November 3, 2026).

63. Persons who acquire records from more than one source can combine them into a profile useful for fraud. A name and telephone number can become more valuable when linked to education, payment, or identity records. That risk is particularly relevant to the increase in named communications Plaintiff describes.

64. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, resulting in more than $3.5 billion in losses to individuals and business victims.[24]

65. Timely, specific information about the affected records would allow Plaintiff and members of the Class to evaluate protective measures suited to the exposure. BU has not given Plaintiff an individual accounting of the records involved.

66. Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

67. In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the damage caused by the theft of their Private Information. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

---

[24] 2019 Internet Crime Report (Feb. 11, 2020) Federal Bureau of Investigation, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120 (last accessed July 9, 2025).

68. Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen Private Information. To protect themselves, Plaintiff and Class Members will need to remain vigilant for years or even decades to come.

***BU Knew—Or Should Have Known—of the Risk of a Data Breach***

69. BU's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

70. Universities maintain stable identifiers and historical records, including after students graduate. BU recognizes this risk in its Data Protection Standards, which prescribe rules for access, storage, transmission, and incident response.[25]

71. BU had direct notice that unauthorized access could expose the identifying information it retained. In a separate 2024 phishing incident, BU reported that a compromised email account contained a tax form with a name, address, and Social Security number. That earlier incident put BU on notice of the consequences of leaving sensitive identifiers accessible through a compromised account.[26]

72. BU's knowledge of these risks and its own classification of sensitive information made the need for reasonable access controls and oversight foreseeable before the Data Breach.

***BU Could Have Prevented the Data Breach***

73. Data breaches are preventable.[27] Indeed, the American Bar Association published a treatise titled the *Data Breach and Encryption Handbook* wherein the author explained that:

---

[25] Boston University, Data Protection Standards Overview, https://www.bu.edu/policies/data-protection-standards/ (last accessed November 3, 2026).
[26] Boston University Information Security, 2024 incident notification, Massachusetts data-breach notice no. 2024-1823, https://www.mass.gov/doc/2024-1823-trustees-of-boston-university/download (last accessed November 3, 2026).
[27] Lucy L. Thomson, Despite the Alarming Trends, Data Breaches Are Preventable, Data Breach and Encryption Handbook (2012).

a. "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[28]

b. "Organizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised[.]"[29]

c. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs." [30]

***BU Failed to Follow FTC Guidelines***

74. The Federal Trade Commission ("FTC") has published guidance identifying practical measures for protecting sensitive personal information. These measures illustrate precautions available to an organization that collects and retains identifiers, financial records, and other confidential information.

75. In Protecting Personal Information: A Guide for Business, the FTC identifies measures such as the following.[31]

a. protect the personal customer information that they keep;

---

[28] Id. at 17.
[29] Id. at 28.
[30] Id.
[31] Federal Trade Commission, Protecting Personal Information: A Guide for Business, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed November 3, 2026).

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

76. The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

77. The FTC further recommends measures that limit exposure when an account or system is compromised.

a. not maintain information longer than is needed to authorize a transaction;

b. limit access to sensitive data;

c. require complex passwords to be used on networks;

d. use industry-tested methods for security;

e. monitor for suspicious activity on the network; and

f. verify that third-party service providers use reasonable security measures.

78. The FTC's guidance illustrates reasonable safeguards. BU's obligations to its students also arise from its own undertakings, the confidential records it kept, and the legal standards applicable to its record systems.

79. On information and belief, inadequate restrictions and monitoring permitted the acquisition of student information at the scale described by the actor. Reasonable safeguards could have prevented or limited that access and allowed BU to detect and contain the exposure.

***BU Failed to Follow Industry Standards***

80. Several best practices have been identified that—at a *minimum*—should be implemented by businesses like BU. These industry standards include: educating all employees;

strong passwords; multi-layer security, including firewalls, anti-virus, and antimalware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

81. Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

82. On information and belief, BU failed to implement reasonable safeguards in areas recognized by the NIST Cybersecurity Framework and BU's own Data Protection Standards, including identity and access management, monitoring, risk assessment, and incident response.

83. Restrictions based on each user's actual need for access are especially important where a university retains permanent transcript and enrollment records alongside other identifying data.

***Safeguards for Education and Student Financial Records***

84. The Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, and its implementing regulations restrict disclosure of personally identifiable information from education records. Subject to specified exceptions, disclosure requires consent. See 34 C.F.R. §§ 99.30, 99.31.

85. Under the school-official exception, a university must use reasonable methods to ensure that school officials obtain access only to education records in which they have legitimate

educational interests. 34 C.F.R. § 99.31(a)(1)(ii). BU's guidance to personnel classifies student records as confidential.[32]

86. Student records in the actor's description included nonpublic enrollments, courses, and grades. Plaintiff entrusted such information to BU within the educational relationship. Its acquisition by an outsider falls outside the purposes for which Plaintiff provided his information.

87. Federal Student Aid has advised postsecondary institutions participating in Title IV programs that the Gramm-Leach-Bliley Act Safeguards Rule applies to covered customer information. Where such information is involved, safeguards include a written information security program, risk assessment, access controls, monitoring, and oversight of service providers. See 16 C.F.R. §§ 314.3, 314.4.[33]

88. BU itself recognizes the application of financial privacy safeguards to covered student financial information. The nature of any covered financial-aid records within the affected dataset remains to be established. Plaintiff relies on applicable safeguards as evidence of reasonable care in administering those records.[34]

89. Massachusetts regulations require persons who own or license covered personal information about Massachusetts residents to maintain a written security program appropriate to the information and the circumstances. Computerized records are subject to additional access, authentication, monitoring, and related controls. See 201 C.M.R. §§ 17.03–17.04.

---

[32] U.S. Department of Education, 34 C.F.R. § 99.31(a)(1)(ii), https://www.ecfr.gov/current/title-34/subtitle-A/part-99/subpart-D/section-99.31 (last accessed November 3, 2026).
[33] U.S. Department of Education, Federal Student Aid, Updates to the Gramm-Leach-Bliley Act Cybersecurity Requirements, https://fsapartners.ed.gov/fsa-print/publication/1004452 (last accessed November 3, 2026).
[34] Boston University, Data Privacy, Privacy Laws, https://www.bu.edu/privacy/topics/privacy-laws/ (last accessed November 3, 2026).

90. These duties illustrate the safeguards relevant to BU's handling of records in Massachusetts. Chapter 93H's duties concerning residents of the Commonwealth apply where the statutory conditions are met. See Mass. Gen. Laws ch. 93H, §§ 1, 3.

91. On information and belief, BU failed to implement appropriate access restrictions and monitoring to protect confidential records retained in its University systems. Plaintiff invokes the applicable educational, financial, and state data-protection standards in support of the state-law claims below.

**CLASS ACTION ALLEGATIONS**

92. Plaintiff brings this action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), individually and on behalf of the following proposed Class.

> All natural persons residing in the United States whose Private Information was accessed or acquired without authorization in the Boston University Data Breach reported on or about November 1, 2026.

93. Excluded from the Class are BU, its agents, affiliates, parents, subsidiaries, any entity in which BU has a controlling interest, any BU officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

94. Plaintiff reserves the right to amend the Class definition as discovery identifies the scope of the intrusion, the affected repositories, and the individuals whose records they contained.

95. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

96. <u>Ascertainability.</u> Affected individuals can be identified from BU's records of enrollment, student accounts, personnel and other records, together with the files, logs, and

forensic findings identifying information accessed or acquired in the incident. Membership does not depend on receipt of an individual notice.

97. Numerosity. On information and belief, the proposed Class contains thousands of members and may exceed 80,000. The exact count awaits investigation of the records involved. Joinder of all members would be impracticable.

98. Typicality. Plaintiff's claims arise from BU's custody and retention of his identifying and student information and the unauthorized acquisition of a dataset reported to include those types of records. The same intrusion, data-handling practices, and alleged failure of safeguards underlie the Class claims.

99. Adequacy. Plaintiff will fairly and adequately protect the interests of the Class. He seeks relief consistent with Class Members' interests, has no known conflict with them, and has retained counsel experienced in class actions and data-privacy litigation.

100. Commonality and Predominance. The same investigation and evidence concerning BU's systems and practices will answer questions common to the Class. Those questions predominate over questions affecting only individual members. They include the following.

a. What duties did BU owe in collecting and retaining confidential identifying, education, and payment records?

b. What safeguards, access restrictions, and monitoring did BU maintain for those records?

c. Did those practices meet the reasonable standard of care for the information BU retained?

d. What commitments did BU undertake concerning access to student records and their confidentiality after graduation?

e. What repositories and categories of records were accessed or acquired, and what did BU do to identify the scope of the incident?

f. Did BU reasonably protect retained records, investigate unauthorized access, and provide information to affected persons as required?

g. Did BU's conduct cause a loss of privacy or other compensable injury to Plaintiff and Class Members?

h. What common evidence can establish the value of the safeguards the Class was entitled to receive and the other damages caused by the Data Breach?

i. What damages, restitution, or declaratory and injunctive relief are appropriate under the laws applicable to the claims?

101. <u>Superiority.</u> A class action is superior to separate litigation of the adequacy of the same systems and the scope of the same intrusion. Individual claims are generally too small to justify separate forensic investigations and litigation. Common treatment avoids inconsistent determinations and permits the Court to address individual differences in remedies where necessary. BU maintained common data policies and acted on grounds applicable to the Class. Plaintiff seeks damages under Rule 23(b)(3) and corresponding injunctive and declaratory relief under Rule 23(b)(2) to address ongoing harm.

## FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Class)**

102. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

103. Plaintiff and Class Members entrusted their Private Information to BU to obtain University services. BU took possession of that information, created linked enrollment and financial records, and retained records after the relationships that generated them had ended.

104. BU owed a duty to use reasonable care to prevent unauthorized access to information in its custody. It was foreseeable that acquiring a University record linked to an individual's name, Social Security number, contact information, academic history, or payment history would expose that individual to loss of privacy and misuse.

105. BU has full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if their Private Information was wrongfully disclosed.

106. BU owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom BU knew or should have known would suffer injury-in-fact from BU's inadequate security practices. After all, BU actively sought and obtained Plaintiff and Class Members' Private Information.

107. BU's duty of reasonable care included the following measures.

a. Restrict access to confidential records to persons with a legitimate need for them.

b. Use reasonable authentication, access controls, and monitoring for systems storing or transmitting sensitive information.

c. Investigate suspicious access, contain an intrusion, and determine what records were affected.

d. Exercise reasonable care in retention and disposal and give affected persons notice when required under applicable law.

108. BU controlled the records and had access to information about the incident that students could not obtain for themselves. A reasonable investigation would identify affected repositories, examine access and export activity, and enable appropriate communications to individuals whose information was involved.

109. A decision to retain a transcript or enrollment snapshot permanently creates a continuing obligation to safeguard that record. It does not require permanent access to every sensitive identifier by every account that can retrieve academic information.

110. BU's duties arose from the confidential information it requested and retained and from its undertaking to restrict its use. Students depended on BU's choices regarding access to the repositories it administered.

111. FERPA's disclosure rules and BU's own treatment of education records as confidential bear on reasonable care. Applicable student financial information also requires safeguards appropriate to the financial activities and data involved. These obligations support the state-law duty alleged here.

112. The risk was foreseeable. BU recognized Social Security numbers as restricted-use data and had previously addressed a compromise involving a sensitive identifier in a University account. It had ample reason to anticipate attempts to obtain confidential records at scale.

113. The combination of identifiers, academic information, and payment records makes a university dataset particularly valuable for impersonation. BU knew or should have known the consequences if records from these functions became accessible to an unauthorized person.

114. On information and belief, BU failed to implement reasonable restrictions and monitoring for the records at issue. The reported acquisition of a large dataset spanning several categories of University records is consistent with those failures.

115. On information and belief, BU further breached its duty of care through the following conduct.

a. Permitting access to confidential files beyond what was reasonably necessary for authorized University functions.

b. Failing to adequately supervise how access rights were granted, reviewed, and revoked and failing to reasonably detect acquisition of records in bulk.

116. These acts and omissions permitted access to information BU maintained for Plaintiff and Class Members. Reasonable controls would have prevented or limited that acquisition and facilitated timely identification of affected records.

117. Plaintiff lacks an individual account of the records accessed. Without that information, he cannot determine the scope of exposure or identify measures proportionate to the risk.

118. Plaintiff alleges on information and belief that data taken from BU included his confidential information. The basis includes the actor's description of retained academic and financial records of the kinds BU maintained for him, BU's retention schedule, and the recent increase in named communications at his BU number.

119. As a direct and proximate result of BU's negligence, Plaintiff and Class Members sustained the privacy, confidentiality, and other injuries described above. Plaintiff seeks compensation for those injuries and measures to protect records that remain in BU's custody.

## SECOND CAUSE OF ACTION
**Negligence *per se***
**(On Behalf of Plaintiff and the Class)**

120. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

121. BU handled education records protected against unauthorized disclosure and identifying and financial information subject to safeguards appropriate to the data involved. The applicable provisions include 20 U.S.C. § 1232g, 34 C.F.R. §§ 99.30 and 99.31, and, where their coverage requirements are met, 201 C.M.R. §§ 17.03–17.04 and 16 C.F.R. §§ 314.3–314.4.

122. These provisions address defined risks. Controls limiting school officials' access to records help keep an academic history within authorized channels. Controls for covered financial information and personal identifiers help prevent unauthorized access and disclosure.

123. Plaintiff and other students whose education records BU maintained fall within the population protected by educational privacy standards. Massachusetts personal-information standards further protect covered records of Massachusetts residents, and financial safeguards protect customer information within their scope.

124. On information and belief, BU failed to reasonably restrict access to the records involved in the reported acquisition, identify excessive access, and monitor for unauthorized retrieval. Those deficiencies permitted the disclosure of confidential information alleged above.

125. The unauthorized acquisition of identifying, academic, and financial information is among the harms these safeguards are designed to prevent. The FTC's published security guidance further illustrates precautions available to custodians of sensitive records.

126. But for BU's wrongful and negligent breach of its duties owed, Plaintiff and Class Members would not have been injured.

127. Reasonable access limitations and oversight would have prevented or reduced the exposure of Private Information to unauthorized persons. The resulting loss of confidentiality was foreseeable.

128. Plaintiff pleads the applicable statutory and regulatory violations as evidence of BU's negligence under Massachusetts law. He relies on the independent duty of reasonable care, its breach, causation, and actual injury alleged herein. See Bennett v. Eagle Brook Country Store, Inc., 408 Mass. 355, 358–59 (1990).

129. As a direct and proximate result, Plaintiff and Class Members sustained the injury from the disclosure of Private Information and the other damages alleged above. Plaintiff seeks recovery under state law.

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

130. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

131. Providing identifying and student-account information was a condition of enrollment and receiving educational services from BU. Plaintiff furnished that information to attend BU from 2020 through 2023. BU accepted his records, registered him for courses, maintained his account, and awarded his degree. Other Class Members who furnished records as students entered the same direct relationship with BU.

132. BU required information to establish the student's identity, register the student for courses, record grades and enrollment, and administer the student's account. BU's conduct in accepting these records and using them for limited purposes manifested an agreement to safeguard them from unauthorized access.

133. Plaintiff and Class Members reasonably understood that part of the tuition and fees paid on their accounts would support reasonable safeguards for the information BU required to provide those services. BU controlled both the safeguards and the length of time it kept the records.

134. The educational relationship, BU's administration of the student accounts, and its acceptance of Private Information for limited purposes manifested that understanding. Its published confidentiality and access policies also describe how it undertakes to protect student records in its custody.

135. Plaintiff accepted BU's offer of services, enrolled, supplied his identifying information, and fulfilled the obligations associated with receiving those services. BU accepted that performance and maintained records of his education and payments.

136. The implied agreement included an undertaking to limit access to legitimate University purposes, exercise reasonable security for the records BU kept, and act reasonably in the event of unauthorized access.

137. That undertaking included reasonable efforts to investigate an unauthorized acquisition and to give timely, accurate information when required to permit students to protect themselves. The obligation to safeguard retained records continued after graduation for as long as BU kept them.

138. After all, Plaintiff and Class Members would not have entrusted their Private Information to BU in the absence of such an agreement with BU.

139. Plaintiff and the Class fully performed their obligations under the implied contracts with BU.

140. The agreements included a covenant of good faith and fair dealing. BU had discretion over which personnel could view, retrieve, or export retained records. Plaintiff and Class Members depended on BU to exercise that discretion consistently with the confidentiality protection included in their enrollment relationship.

141. On information and belief, BU materially breached that undertaking in the following ways.

a. Failing to reasonably safeguard the confidential information entrusted to it.

b. Failing to reasonably restrict and monitor access to retained records.

c. Failing to maintain reasonable controls against unauthorized acquisition of large numbers of linked records.

d. Failing to identify and account adequately for the information accessed through the incident.

e. Failing to preserve the confidentiality of the student information and account information BU retained under the agreement.

142. On information and belief, BU exercised control over access to student records in a manner that frustrated the agreed benefit of confidentiality and allowed the reported acquisition of linked records. Its failure to furnish the promised protection breached the agreement and its implied covenant.

143. BU's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed *supra*).

144. The breach deprived Plaintiff and similarly situated Class Members of the confidentiality protections included in their relationship with BU and exposed their Private Information to unauthorized use. Plaintiff seeks damages measured by the loss of those protections and other recoverable injury proved at trial.

145. Plaintiff and Class Members performed the obligations applicable to them, or their performance was excused. They have been injured as a result of BU's material breach.

**<u>FOURTH CAUSE OF ACTION</u>**
**Invasion of Privacy**
**Mass. Gen. Laws ch. 214, § 1B**
**(On Behalf of Plaintiff and the Class)**

146. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

147. Plaintiff brings this claim under Mass. Gen. Laws ch. 214, § 1B. Plaintiff and Class Members had a reasonable expectation of privacy in the sensitive identifying, education, and financial records they disclosed or that BU created and kept about them.

148. BU expressly classified student records as confidential and placed particular restrictions on government identifiers. Its Registrar described the limits on disclosure of personally identifiable education records, and its retention policies contemplated continued custody after graduation.

149. Plaintiff gave BU his Social Security number and other personal information for purposes of his education and his account. Student authorization to administer those records did not include disclosure to an unidentified person claiming an eight-gigabyte dataset on the dark web.

150. On information and belief, BU's failure to restrict access in accordance with its undertakings permitted unauthorized persons to obtain records linking students to their private academic, identifying, and financial information.

151. The resulting interference with the privacy of Plaintiff and Class Members was unreasonable and substantial or serious. It involved private affairs ordinarily accessible only to the individual and authorized personnel and permitted records from different areas of life to be associated with the same person.

152. On information and belief, BU knew of the sensitivity of these records, the restrictions appropriate to them, and the risks of keeping them accessible after graduation. Its own classifications, restrictions on identifiers, and prior experience with unauthorized access put it on notice of those risks.

153. The disclosure deprived Plaintiff and Class Members of control over who could obtain their Private Information and for what purpose. A reasonable person would object to such access to identifying, academic, or payment records.

154. BU continues to retain records concerning Plaintiff and members of the Class. Monetary damages cannot alone secure information still in BU's possession. Plaintiff requests equitable relief directed to continuing interference and inadequacies established by the evidence.

155. Plaintiff and the Class have no adequate remedy at law for the injuries relating to BU's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end BU's inability to safeguard the Private Information of Plaintiff and the Class.

156. Plaintiff seeks compensation for the invasion of privacy and corresponding equitable relief under Mass. Gen. Laws ch. 214, § 1B, together with interest and costs as permitted by law.

## FIFTH CAUSE OF ACTION
## Unjust Enrichment
## (On Behalf of Plaintiff and the Class)

157. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

158. This claim is pleaded in the alternative to the breach of implied contract claim.

159. BU received identifiable student information and the benefits of the enrollment relationships and payments associated with Plaintiff and Class Members. Those benefits enabled it to administer its educational and student-account services.

160. BU knew and appreciated the value of those benefits. It chose how much to spend securing the systems and records needed to furnish those services.

161. Plaintiff and Class Members reasonably expected BU to devote resources appropriate to the sensitivity of the information it required and retained.

162. On information and belief, BU retained benefits associated with student services while avoiding expenditures reasonably necessary to secure their records. BU's retention of the portion attributable to safeguards it did not provide is inequitable.

163. The claimed unjust benefit is the value BU retained from failing to provide reasonable security. Plaintiff seeks restitution measured by that benefit to the extent a contract does not furnish an adequate remedy.

164. Plaintiff and similarly situated Class Members conferred the benefits described above in circumstances in which it would be unjust for BU to keep the amount attributable to the missing protection.

165. Plaintiff seeks restitution or disgorgement of those amounts in a measure to be established through discovery and trial.

## <u>SIXTH CAUSE OF ACTION</u>
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

166. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

167. BU accepted a particular position of trust with respect to the safekeeping and authorized use of confidential records. It solicited identifiers and student information for limited purposes, undertook to restrict access to education records, and exercised exclusive control over its institutional repositories and retention schedules.

168. Within the scope of that undertaking, Plaintiff and Class Members relied on BU to protect records they could not themselves monitor, retrieve, or delete. BU knew of that reliance because supplying information was part of obtaining and administering University services.

169. Plaintiff alleges that this entrustment of sensitive records, BU's specific privacy undertakings, and its exclusive control created fiduciary obligations concerning their custody and

confidentiality. Plaintiff invokes duties arising from those circumstances within the scope of the undertaking.

170. On information and belief, BU breached those duties by permitting unauthorized access to records kept for Plaintiff and Class Members, failing to adequately restrict or monitor that access, and failing to adequately account for material risks to information held in confidence.

171. The risk of harm arose from the loss of confidentiality of information BU undertook to protect. That harm continues while unauthorized persons can use the acquired information and BU retains records requiring protection.

172. As a direct and proximate result, Plaintiff and Class Members suffered the loss of privacy and other injuries described above. They seek damages and appropriate equitable relief.

## SEVENTH CAUSE OF ACTION
**Breach of Confidence**
**(On Behalf of Plaintiff and the Class)**

173. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

174. Plaintiff and Class Members gave BU sensitive identifying and student-account information in confidence. Academic records created by BU in the course of the relationship were likewise understood to be available only for authorized University uses.

175. By accepting those records to administer Plaintiff's education, BU undertook an obligation to keep them confidential. Its Registrar's representations and its limits on access to identifiers describe the purposes for which BU would use and disclose them. Plaintiff's graduation left BU in possession of records that were still subject to that undertaking.

176. BU understood the confidential nature of the records, retained them after graduation, and controlled the systems through which they could be accessed. Students depended on BU to maintain their confidence.

177. On information and belief, BU breached the confidence placed in it in the following respects.

a. Failing to take reasonable measures to prevent unauthorized persons from acquiring confidential records.

b. Permitting access to or transfer of information outside the purposes for which it was entrusted.

c. Failing to adequately account for the confidential information exposed through the Data Breach.

178. As a direct and proximate result, Plaintiff and Class Members lost the confidentiality of the information disclosed, suffered the injuries described above, and seek damages and corresponding equitable relief.

## EIGHTH CAUSE OF ACTION
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

179. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

180. Under 28 U.S.C. §§ 2201–2202, the Court may declare the rights and legal relations of the parties in an actual controversy within its jurisdiction and grant further relief appropriate to effectuate that declaration.

181. A present controversy exists concerning BU's duties in continuing to retain and protect the identifying and education records of Plaintiff and Class Members. BU's policy calls for permanent retention of transcripts and specified enrollment records. On information and belief it continues to maintain identifiable records concerning Plaintiff. He cannot revoke BU's access to those records or secure them himself.

182. Plaintiff seeks a declaration resolving the following matters concerning records BU continues to maintain.

a. BU owes a continuing duty of reasonable care concerning confidential records it retains for Plaintiff and Class Members.

b. BU must reasonably restrict access and account for unauthorized access to those records and give notice as applicable law requires.

c. BU's duties extend to records retained after the student or other individual ceases to participate in University services.

d. Plaintiff and Class Members are entitled to appropriate relief for ongoing injury caused by deficient protection of their retained information.

183. Plaintiff requests an injunction tailored to the deficiencies established, including review of access privileges for retained records, controls for bulk retrieval, monitoring and auditing of access, and an accounting of the affected repositories and fields to persons whose records were involved.

184. Plaintiff alleges a continuing injury arising from exposure of confidential information and BU's continued custody of records subject to the challenged practices. Relief should address the practices that continue to endanger those records.

185. Damages for past exposure cannot restore confidentiality or remedy deficiencies that continue to affect records in BU's custody. Plaintiff seeks equitable relief to the extent necessary to redress that ongoing injury.

186. Effective access restrictions and a reliable accounting would protect retained records and enable affected persons to select appropriate protective measures.

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and the following relief.

a. An order certifying the proposed Class under Rule 23, appointing Plaintiff as class representative, and appointing his counsel as class counsel.

b. Appropriate declaratory relief concerning BU's duties to protect records it continues to maintain.

c. Injunctive and other equitable relief necessary to remedy continuing deficiencies established by the evidence and to protect retained information.

d. An order restraining proven unfair or deceptive practices in connection with the administration and safekeeping of sensitive records.

e. Compensatory damages, statutory damages, and enhanced damages where authorized and proved, in amounts determined at trial.

f. Restitution or disgorgement to the extent legally available on the claims pleaded in the alternative.

g. Reasonable attorneys' fees and costs as allowed by law.

h. Prejudgment and post judgment interest as permitted by law.

i. Leave to amend this Complaint as warranted by discovery and the evidence.

j. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Dated November 12, 2026

Respectfully submitted,

By: _/s/ Randi Kassan_
Randi Kassan
**MILBERG, PLLC**
100 Garden City Plaza, Suite 408
Garden City, NY 11530
Telephone: (516) 741-5600
rkassan@milberg.com

Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
raina@straussborrelli.com

*Attorneys for Plaintiff and the Proposed Class*

**Pro hac vice admission forthcoming*